UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS COURTHOUSE

| | |
|---|---|
| Selina Valencia, individually and on behalf of all others similarly situated, | 7:23-cv-01399-CS |
| Plaintiff, | |
| - against - | First Amended Class Action Complaint |
| Snapple Beverage Corp., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.   Snapple Beverage Corp. ("Defendant") sells fruit beverages described as "All Natural" despite containing ingredients inconsistent with how consumers understand this term ("Products").



2. The statement "All Natural" appears on the top of all regular fruit varieties, such as the Mango Madness and Snapple Apple.



3. According to Consumer Reports' Natural Food Labels Survey, just over sixty percent of consumers think a "natural label on packaged/processed foods" means that no artificial colors, materials, or chemicals were used to make the food.

4. A large majority of consumers prefer foods with natural instead of artificial ingredients for several reasons.

5. First, over half of consumers believe that foods with artificial ingredients are less

healthy compared to those with only natural ingredients.

6. The Nielsen Global Health and Wellness Survey concluded that 60% of dieters were more likely to consume foods labeled as "natural."[1]

7. Second, more than half of the public wants to consume foods that are closer to their original form, instead of having been highly processed or containing highly processed and modified ingredients.[2]

8. Third, consumers believe that foods with natural ingredients are better for the environment than those laden with synthetic ingredients and made through artificial processes.

9. Fourth, "the preference for natural products appeals to a moral ideology and offers a moral satisfaction."[3]

10. A recent Nielsen survey determined that a significant majority of consumers are willing to pay more for foods with natural ingredients as opposed to artificial ingredients.

11. One researcher found that a purchasers' subjective understanding of labeling resulted in the food tasting subjectively better, which functions as a "reward mechanism" for buying it.

12. The Food and Drug Administration ("FDA") and Federal Trade Commission ("FTC") have recognized that "natural" claims are confusing and misleading to consumers and breach their legitimate expectations about its meaning.

13. Consumers understand natural as meaning nothing artificial or synthetic has been included in, or has been added to, a food that would not normally be expected.

---

[1] Chambers, Edgar, Edgar Chambers IV, and Mauricio Castro. "What is "natural"? Consumer responses to selected ingredients." Foods 7.4 (2018): 65.
[2] Andrea Rock, "Peeling Back the 'Natural' Food Label," Consumer Reports, 27 January 2016.
[3] Rozin, P., Spranca, M., Krieger, Z., Neuhaus, R., Surillo, D., Swerdlin, A., & Wood, K. (2004). Preference for natural: Instrumental and ideational/moral motivations, and the contrast between foods and medicines. Appetite, 43(2), 147-154.

14. The FDA has similarly defined "natural," and recognizes that added coloring is inconsistent with foods labeled as "natural," even when they are from natural sources.[4]

15. In response to the FDA's request for comments on the use of the term "natural," at least hundreds of ordinary consumers shared their opinions about added coloring and other ingredients added to food.[5]

16. One commentator, Erin Singleton, stated that any food that was "colored using a dye – natural or synthetic" should not be labeled as "natural."[6]

17. Another stated "I would like to see the term 'natural' mean … no artificial colors,"[7] while another expected it meant that "No … Food Coloring, or Artificial ingredients."[8]

18. A citizen named Kristine Milochik stated, "When I see the word 'Natural' on packaging, I expect the contents to have only ingredients as they are found in nature. No chemicals, no coloring, no flavoring, no GMO's."

19. Another commenter said "natural" should refer to foods that "contain no added colors, flavors, or synthetic substances."

20. Commenters went beyond colors and emphasized that ingredients like citric acid, when not from lemons were inconsistent with their expectations of foods labeled as natural.

21. Based on the FDA's and consumers understanding of "natural," consumers do not expect the Products to have added color in the form of "Vegetable and Fruit Juice Concentrates (For Color)" and citric acid, rendering "All Natural" misleading.

22. Despite the labeling as "All Natural," the Products contain numerous ingredients

---

[4] FDA, Use of the Term Natural on Food Labeling, Oct. 2, 2018.
[5] FDA, Use of the Term Natural on Food Labeling, (comments in docket folder FDA-2014-N-1207) Oct. 2, 2018 (over 7,000 consumers responded).
[6] FDA-2014-N-1207-1736 (Posted Dec. 17, 2015).
[7] FDA-2014-N-1207-0018 (Posted Nov. 19, 2015).
[8] FDA-2014-N-1207-0110 (Posted Nov. 23, 2015).

inconsistent with this term, such as citric acid and vegetable and fruit juice concentrates for color.



FILTERED WATER, SUGAR, APPLE AND PEAR JUICE CONCENTRATES, CITRIC ACID, VEGETABLE AND FRUIT JUICE CONCENTRATES (FOR COLOR), NATURAL FLAVORS.

FILTERED WATER, SUGAR, KIWI JUICE CONCENTRATE, CITRIC ACID, MANGO PUREE CONCENTRATE, NATURAL FLAVORS, VEGETABLE JUICE CONCENTRATE AND BETA CAROTENE (FOR COLOR).

23. While the coloring in the apple and mango drinks are from natural sources, it is misleading to describe beverages with any added colors as natural because consumers do not expect them to be part of such drinks.

24. The statement of "All Natural" is false and misleading because the ingredient list reveals the Product contains citric acid, an industrially produced, synthetic ingredient.

25. Until demand outstripped supply in the early twentieth century, the only citric acid was natural, from citrus fruit.

26. For over a hundred years, none of the production of citric acid has been natural because it is made beginning with fermentation from the *Aspergillus niger* mold in huge industrial vats.

27. The result is a broth containing citric acid, which must be recovered through numerous chemical reactions with synthetic mineral salts and reagents.

28. This chemical reaction forms tri-calcium citrate tetra hydrate, treated with sulfuric

5

acid in acidolysis reactors.

29. Consumers like Plaintiff do not expect the Products to have the industrially produced chemical of citric acid, because it is inconsistent with their understanding of "All Natural."

## Jurisdiction and Venue

30. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

31. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

32. Plaintiff is a citizen of New York.

33. Defendant is a citizen of Delaware and Texas.

34. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

35. The members of the class Plaintiff seeks to represent are more than 100, because the Products have been sold with the representations described here from convenience stores, supermarkets, drugstores, big box stores and online in this State for several years.

36. Venue is in this District with assignment to the White Plains Courthouse because a substantial part of the events or omissions giving rise to these claims occurred in Westchester County, including Plaintiff's purchase, reliance on the identified statements, consumption and use of the Products and experiences described here and subsequent awareness they were false and misleading.

## Parties

37. Plaintiff Selina Valencia is a citizen of Eastchester, Westchester County, New York.

38. Defendant Snapple Beverage Corp. is a Delaware corporation with a principal place

of business in Plano, Texas.

39. Defendant is a leading seller of non-carbonated juice drinks.

40. As a result of the false and misleading representations, the Products are sold at a premium price of $1.99 for 16 oz, excluding tax and sales.

41. Plaintiff purchased the Products at stores including Stop & Shop in Eastchester in the fall and/or winter of 2022, and/or among other times, at or around the above-referenced price.

42. Plaintiff sought juice beverages that were all natural, which she understood as not containing synthetic or chemical ingredients and added coloring.

43. Plaintiff did not expect juices based on apples and mangos would have added coloring or industrially produced chemicals like citric acid.

44. Plaintiff paid more for the Products than she would have or would not have bought them had she known "All Natural" did not truthfully represent all of the ingredients which comprised them, and that such representations and omissions were false and misleading.

45. The value of the Products that Plaintiff purchased were materially less than their value as represented by Defendant.

## Class Allegations

46. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and

47. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

48. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

49. Plaintiff is an adequate representative because her interests do not conflict with other members.

50. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

51. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

52. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## New York General Business Law ("GBL") §§ 349 and 350

53. Plaintiff incorporates by reference all preceding paragraphs.

54. Plaintiff expected the Products' ingredients were entirely natural and did not have added coloring or industrially produced ingredients like citric acid.

55. Plaintiff was misled because "All Natural" was inconsistent with how she and other consumers understood this term in the context of juice beverages.

## Unjust Enrichment

56. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

   1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

   2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated: July 21, 2023

                                              Respectfully submitted,

                                              /s/ Spencer Sheehan
                                              Sheehan & Associates, P.C.
                                              60 Cuttermill Rd Ste 412
                                              Great Neck NY 11021
                                              (516) 268-7080
                                              spencer@spencersheehan.com