UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SELINA VALENCIA, individually and on behalf
of all others similarly situated,

                               Plaintiff,                **OPINION & ORDER**

    - against -                           No. 23-CV-1399 (CS)

SNAPPLE BEVERAGE CORP.,

                                Defendant.
------------------------------------------------------------x

<u>Appearances</u>:

Katherine Lalor
Spencer Sheehan
Sheehan & Associates, P.C.
Great Neck, New York
*Counsel for Plaintiff*

Charles C. Sipos
Thomas J. Tobin
Perkins Coie LLP
Seattle, Washington
*Counsel for Defendant*

<u>Seibel, J.</u>

      Before the Court is Defendant's motion to dismiss.  (ECF No. 17.)  For the following

reasons, Defendant's motion is GRANTED.

**I.**      **BACKGROUND**

      For purposes of this motion, the Court accepts as true the facts, but not the conclusions,

alleged by Plaintiff in her First Amended Complaint.  (*See* ECF No. 12 ("FAC").)

A.   **Facts**

Snapple Beverage Corporation ("Defendant") sells fruit beverages, including "Mango Madness" and "Snapple Apple" (the "Products"), with the statement "All Natural" displayed on the front of the bottles, as depicted below:



(FAC ¶¶ 1-2.)  The Products are sold at $1.99 per bottle, and Plaintiff purchased them at stores, including a Stop & Shop in Eastchester, New York, in the fall or winter of 2022.  (*Id.* ¶¶ 40-41.) As depicted below, the apple drink contains "filtered water, sugar, apple and pear juice concentrates, citric acid, vegetable and fruit juice concentrates (for color), [and] natural flavors," and the mango drink contains "filtered water, sugar, kiwi juice concentrate, citric acid, mango puree concentrate, natural flavors, vegetable juice concentrate and beta carotene (for color)."





(*Id.* ¶ 22.)

Plaintiff alleges that the statement "All Natural" on the Products' front labels is false and misleading because the Products contain vegetable and fruit juice concentrates for color, and citric acid.  (*See id.* ¶¶ 21-22.)  She contends that she and other consumers do not expect "All Natural" beverages to contain added coloring even if the coloring comes from natural sources, nor do they expect citric acid that is industrially produced, as all citric acid nowadays allegedly is.  (*See id.* ¶¶ 21-24, 26, 29, 42-43.)  She submits that "[a] large majority of consumers prefer foods with natural instead of artificial ingredients for several reasons," (*id.* ¶ 4; *see id.* ¶¶ 5-11), and that "a significant majority of consumers are willing to pay more for foods with natural ingredients as opposed to artificial ingredients," (*id.* ¶ 10).  She alleges that she "paid more for the Products than she would have or would not have bought them had she known 'All Natural' did not truthfully represent all of the ingredients," (*id.* ¶ 44), and that the value of the Products was materially less than as represented by Defendant, (*id.* ¶ 45).

### B.   <u>Procedural History</u>

Plaintiff filed her initial complaint on February 19, 2023.  (ECF No. 1.)  On June 30, 2023, Defendant filed a pre-motion letter in anticipation of a motion to dismiss.  (ECF No. 8.)  On July 21, 2023, Plaintiff opposed the pre-motion letter, (ECF No. 11), and on July 22, 2023, Plaintiff filed the FAC, (ECF No. 12), dropping several claims – including for violations of "State Consumer Fraud Acts"; breaches of express warranty, the implied warranty of merchantability, and the Magnuson Moss Warranty Act; and fraud – that had been advanced in the original Complaint, (*see* ECF No. 1).[1]  Plaintiff's FAC asserts claims for violations of

---

[1] This is similar to the course of action one of Plaintiff's lawyers, Spencer Sheehan, regularly takes – bringing such claims and then withdrawing them in the face of a motion to

sections 349 and 350 of the New York General Business Law ("GBL") and unjust enrichment. (FAC ¶¶ 54-56.)  Plaintiff wishes to represent a class of all persons residing in New York who purchased the Products within the statute of limitations, (*id.* ¶ 46), and seeks both monetary damages and costs and expenses, including attorney's fees, (*id.* at 8-9).  I held a pre-motion conference on July 28, 2023, at which I granted Plaintiff leave to amend, which Plaintiff declined to do, and set a briefing schedule.  (*See* Minute Entry dated July, 28, 2023.)  The instant motion followed.  (*See* ECF No. 17.)

## II.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

_____

dismiss.  *See Adeghe v. Procter & Gamble Co.*, No. 22-CV-10025, 2024 WL 22061, at *2 n.3 (S.D.N.Y. Jan. 2, 2024); *Fuller v. Stop & Shop Supermarket Co. LLC*, No. 22-CV-9824, 2023 WL 8005319, at *2 n.1 (S.D.N.Y. Nov. 17, 2023) (collecting cases).  Counsel's good faith in bringing such claims in the first place has been questioned with enough frequency that the conduct appears willful.

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III.   DISCUSSION

### A.   New York General Business Law Claims

Plaintiff's first cause of action arises under sections 349 and 350 of the GBL.  The former prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," N.Y. Gen. Bus. Law § 349, and the latter prohibits "[f]alse advertising in the conduct of any business, trade or commerce," *id.* § 350.  To state a claim under either section, a plaintiff must plausibly allege "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *6 (S.D.N.Y. Oct. 26, 2016); *see Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

"New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading:  whether the alleged act is likely to mislead a reasonable

consumer acting reasonably under the circumstances." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022). "To survive a motion to dismiss, a plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Id.* Instead, "a plaintiff must plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* "Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021).[3]

Defendant's motion focuses on the second element of a GBL claim:  whether Plaintiff has sufficiently alleged that the Products' "All Natural" label is materially misleading, (*see generally* ECF No. 18 ("D's Mem.")).  Plaintiff alleges that it is because the Products contain vegetable and fruit juice concentrates for color, and citric acid.  (*Id.* ¶¶ 21, 54.)  The Court disagrees.

---

[3] Plaintiff relies on *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013), to argue that whether the "All Natural" label deceived consumers is a question of fact that cannot be resolved at the motion to dismiss stage. (*See* ECF No. 19 ("P's Opp.") at 3-4.)  While the question of whether a representation would mislead a reasonable consumer acting reasonably is sometimes a factual one that cannot be resolved on a motion to dismiss, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) ("The New York Court of Appeals' adoption of an objective definition of deceptive acts and practices which may be determined as a matter of law or fact (as individual cases require), was intended to avoid a tidal wave of litigation against businesses that was not intended by the Legislature.").

1. **Coloring**

Plaintiff alleges that although the coloring in the Products is from natural sources, "it is misleading to describe beverages with any added colors as natural because consumers do not expect them to be part of such drinks." (*Id.* ¶ 23.) To support this allegation, Plaintiff cites a Food and Drug Administration ("FDA") announcement in which the FDA sought public comment on the use of the term "natural" in food labeling and explained that, although it had not issued a formal definition of "natural," it "has considered the term 'natural' to mean that nothing artificial or synthetic (including all color additives regardless of source)" is included or has been added to the food "that would not normally be expected to be in that food." U.S. Food & Drug Admin., *Use of the Term Natural on Food Labeling*, https://www.fda.gov/food/food-labeling-nutrition/use-term-natural-food-labeling [https://perma.cc/L8V5-KETK] (last updated Oct. 22, 2018). (FAC ¶ 14.) Plaintiff also references public comments in which consumers shared their opinions about added coloring and other ingredients in response to the FDA's request for comment. (*See id.* ¶¶ 15-20.)[4] Plaintiff submits that "[b]ased on the FDA's and consumers['] understanding of 'natural,' consumers do not expect the Products to have added color in the form of 'Vegetable and Fruit Juice Concentrates (For Color)' . . . rendering 'All Natural' misleading." (*Id.* ¶ 21.) Thus, she argues that she has met the reasonable consumer standard because "she has

---

[4] The FDA requested public comment on the use of the term "natural" on November 12, 2015, *see* Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69905 (Nov. 12, 2015), and received 7,687 comments by the close of the comment period on May 10, 2016, *see generally* Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments; Extension of Comment Period, 80 Fed. Reg. 80718 (Dec. 28, 2015); *Use of the Term "Natural" in the Labeling of Human Food Products*, https://www.regulations.gov/docket/FDA-2014-N-1207/comments [https://perma.cc/LU7F-FYL4] (last visited Feb. 29, 2024). Plaintiff quotes five of these 7,687 comments, and attributes another opinion to an unspecified number of "commenters," in support of her allegations. (*See* FAC ¶¶ 16-20.)

established that consumers share in her expectation of what 'All Natural' meant."  (ECF No. 19

("P's Opp.") at 2.)  This argument fails for several reasons.

First, as several courts in this Circuit have explained, the FDA's regulations or views are

irrelevant or at least not dispositive when it comes to determining whether a reasonable

consumer would be deceived or mislead under GBL §§ 349-50.  *See Fuller v. Stop & Shop

Supermarket Co. LLC*, No. 22-CV-9824, 2023 WL 8005319, at *5 n.5 (S.D.N.Y. Nov. 17, 2023)

("Plaintiff's suggestion that the Product runs afoul of an unspecified FDA suggestion is 'not

relevant to determining whether a label is deceptive or misleading under GBL §§ 349-350'

because '[t]here is no private right of action for breaches of FDA provisions, and violations of

federal standards do not automatically translate into an actionable claim under GBL §§ 349-

350.'") (quoting *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493, 2020 WL 6323775, at

*3 n.6 (S.D.N.Y. Oct. 27, 2020)); *Henry v. Campbell Soup Co.*, No. 22-CV-431, 2023 WL

2734778, at *7 (E.D.N.Y. Mar. 31, 2023) (FDA regulations are "without consequence" and not

probative of liability for GBL claims); *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d

102, 113 (E.D.N.Y. 2021) ("Because of [the different standards that the FDA and New York law

apply to determine whether a label is false or misleading], courts have concluded that FDA

guidance is 'without consequence' when stating a claim under New York law.") (quoting *Steele

v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 49 (S.D.N.Y. 2020))*; see also Hoffman v.

Kraft Heinz Foods Co.*, No. 22-CV-397, 2023 WL 1824795, at *8 (S.D.N.Y. Feb. 7, 2023) ("In

the Second Circuit, a GBL claim is viable where the plaintiff makes a free-standing claim of

deceptiveness under GBL § 349 that happens to overlap with a possible claim under another

statute that is not independently actionable, but fails where the violation of the other statute by

conduct that is not inherently deceptive is claimed to constitute a deceptive practice that serves

as the basis for the GBL § 349 claim" and "Plaintiff [thus] cannot state a claim because . . . the conduct alleged to violate the FDA regulations is not so inherently deceptive as to be misleading to a reasonable consumer under GBL §§ 349-50."); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 165 n.7 (S.D.N.Y. 2021) (potential violation of FDA regulations would not support GBL claim). Accordingly, I need not consider the FDA's views in assessing whether Plaintiff has plausibly alleged that a reasonable consumer would be deceived or misled by the Products' label.[5]

Plaintiff cites *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135 (S.D.N.Y. 2021), which seems to buck this trend, to argue that the FDA's views at least make her allegations plausible. (*See* P's Opp. at 3.) There the court considered whether an "All-Natural" label was misleading under GBL §§ 349-50 where the products contained citric acid manufactured from a mold called *Aspergillus niger*. *See Mason*, 515 F. Supp. 3d at 143. The plaintiff pointed to two warning

---

[5] Defendant correctly asserts that the FDA's view on coloring is "decades-old" because it dates back to a rule the FDA proposed on November 27, 1991. (D's Mem. at 4; ECF No. 20 at 3 & n.1); *see* Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 56 Fed. Reg. 60421, 60466-67 (proposed Nov. 27, 1991) (noting that "[i]n its informal policy, the agency has considered 'natural' to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there" and seeking the public's guidance on how "natural" should be defined and whether it should develop a definition for the term); Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993) (noting in the final rule that none of the public comments provided direction on developing a definition for the term "natural" and declining to undertake rulemaking to establish such a definition, instead maintaining the policy described in the proposed rule).

Plaintiff's argument to the contrary – that the view is not "decades-old" because it is referenced in the FDA's 2015 request for comment (P's Opp. at 3) – merely shows that it was not until 2015 that the FDA chose to begin to revisit its decades-old determinations as to the term "natural" – a process that apparently is not yet complete. In any event, even if the FDA's view was first introduced in 2015, it would still not be dispositive of the reasonable consumer analysis here.

letters in which the FDA suggested that citric acid so manufactured makes such a label misleading. *Id.* The court stated that "[t]he FDA's views, while relevant, are not dispositive" as to "whether the plaintiff has stated plausibly that the label is likely to be misleading to a reasonable consumer acting reasonably," but concluded that "the FDA material, at minimum, makes the plaintiff's allegations plausible rather than merely possible." *Id.* at 143-44. Even if the FDA's views were merely non-dispositive rather than without consequence, I respectfully disagree with my admired colleague that the FDA's views, without more, cast sufficient light on those of consumers to render a claim plausible. "[T]he operative question is whether the plaintiff has stated plausibly that the label is likely to be misleading to a reasonable consumer acting reasonably," *id.* at 143, and what the FDA might determine as a matter of science does not necessarily even influence, let alone equate to or determine, a reasonable consumer's understanding, *see Silva v. Hornell Brewing Co.*, 20-CV- 756, 2020 WL 4586394, at *2 (E.D.N.Y. Aug. 10, 2020) ("Any guidance the FDA ultimately issues about the term 'natural' will not be inconsistent with the outcome the court reaches in this case because the FDA is not tasked with applying a reasonable consumer standard."). Absent plausible allegations that the FDA's opinion influences that of the reasonable consumer, it is hard to see what relevance it has. *See Warren*, 574 F. Supp. 3d at 113 ("[T]he complaint does not allege that reasonable consumers are aware of [the FDA's views], much less that they incorporate [these views] into their day-to-day marketplace expectations."). Even when the FDA has a formal labeling standard, as opposed to the informal policy at issue here, it is not relevant absent evidence that "the perceptions of ordinary consumers align with" those standards. *Id.* at 114. The FDA's opinion that added coloring from any source is inconsistent with an "all natural" label simply does not render plausible the conclusion that a reasonable consumer would think such a label is

misleading or deceptive because ingredients from natural sources have been added for color as disclosed by the ingredient list.  *See id.* at 115 ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.").

Second, the consumer comments described in the FAC are insufficient to plausibly allege deception.  The isolated comments Plaintiff cherry-picks out of the thousands submitted cast little light on what the reasonable consumer's view is on natural vegetable and fruit concentrate used for coloring.  As the Second Circuit has made clear, "[i]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."  *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018).  And "[t]o survive a motion to dismiss, a plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers," and instead "must plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled."  *Dwyer*, 598 F. Supp. 3d at 149.  Plaintiff has alleged that a few consumers might understand the label to mean that no color has been added, or might prefer that it mean that, but she has not plausibly alleged that a significant portion of reasonable consumers acting reasonably under the circumstances would find the "All Natural" label misleading in this context where the added color is from natural sources.  Plaintiff's argument that "her definition [of All Natural] is a universal one shared by consumers and the FDA," (P's Opp. at 5), is conclusory, *see Rockaway Bev., Inc. v. Wells Fargo & Co.*, 378 F. Supp. 3d 150, 160 (E.D.N.Y. 2019) ("[C]ourts . . . need not credit conclusory statements unsupported by assertions of facts . . . ."), and rather sets forth her subjective belief, *see de Lacour v. Colgate-Palmolive Co.*, No. 16-CV-8364, 2024 WL 36820, at *6 (S.D.N.Y. Jan. 3, 2024) ("Named Plaintiffs have offered nothing to show that their

views of the word 'natural' reflect those held by a reasonable consumer, rather than their own subjective beliefs.").[6]

Third, viewing the labels in context reveals that the apple drink, in addition to the vegetable and fruit juice concentrates added for color, also contains pear juice concentrate along with apple, and the mango drink, in addition to the vegetable juice concentrate and beta carotene used for color, also contains kiwi juice concentrate along with mango puree.  (*See* FAC ¶ 22.) Yet Plaintiff does not allege that the presence of the pear or kiwi concentrates renders the apple or mango drink not natural.  The only thing that distinguishes the natural fruit and vegetable concentrates that Plaintiff attacks is that the label discloses that they are included "for color." (*See id.*)  A reasonable consumer acting reasonably in this context would not think that such a designation renders the natural ingredients or the drink unnatural.  In short, it is not plausible that a reasonable consumer would think that adding a natural product to a natural product renders the latter not natural.

Fourth, even if it might be reasonable to question whether the "All Natural" label meant what it seems to (that the Products' ingredients are all natural) or what Plaintiff contends (that it contains no coloring, natural or not), that would merely show that the front label is ambiguous.[7] "In certain contexts involving statements susceptible to only one interpretation – *i.e.*, when the meaning of a challenged statement is clear – shoppers expect that the rest of the package will

_____

[6] The FAC also references a "Consumer Reports' Natural Food Labels Survey," which found that "just over sixty percent of consumers think a 'natural label on packaged/processed foods' means that no artificial colors, materials, or chemicals were used to make the food." (FAC ¶ 3.)  This survey does not bolster Plaintiff's argument because it only discusses consumers' thoughts on artificial coloring and not coloring from natural sources.

[7] Indeed, "governmental attempts to define 'natural' on food products have not resulted in a consistent definition of 'natural.'"  *de Lacour*, 2024 WL 36820, at *6.

confirm that representation and are not reasonably expected to investigate further.  But when a statement is ambiguous, every reasonable shopper knows the devil is in the details and thus would seek clarification elsewhere on the package." *Adeghe v. Procter & Gamble Co.*, No. 22-CV-10025, 2024 WL 22061, at *3 (S.D.N.Y. Jan. 2, 2024); *see Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 310-311 (S.D.N.Y. 2022) ("[C]ourts in this Circuit have reasoned that if a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the Court should inquire as to whether the allegedly misleading element is instead merely ambiguous."); *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-2886, 2021 WL 4502439, at *3 (E.D.N.Y. Sept. 30, 2021) ("Where the front of a package makes a bold and blatant misstatement about a key element of a product, there is little chance that clarification or context on the reverse of the package will suffice to overcome a deception claim . . . . But when the front of the package is better characterized as ambiguous than misleading, courts look[] at the alleged misrepresentations in their full context and are more likely to grant a motion to dismiss.").

Here, if any consumers were unclear as to whether "All Natural" meant that the Products' ingredients were all natural or that no ingredients – even natural ones – were included for color, they could read the ingredients lists, which make clear that certain natural ingredients are used for color, to clarify their understanding.  Plaintiff argues, (P's Opp. at 6), that the labels here are akin to the labels in *Mantikas*, where the court held that the products' "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" labels were misleading because they did not disclose that the quantity of enriched white flour exceeded the quantity of whole grain.  *See* 910 F.3d at 638-39. The Court disagrees.  There the consumer was misled, by a label the court did not find to be ambiguous, into thinking that the product was predominantly whole grain – a misconception that

the rest of the label did not dispel.  *See id.*  Here, even if the labels could be regarded as ambiguous – and the Court believes they are unambiguously accurate – the ingredients lists make clear that some of the natural ingredients are included for color.  Therefore, the labels are not materially misleading.  *See Bynum*, 592 F. Supp 3d at 311-12; *see also Chimienti v. Wendy's Int'l, LLC*, No. 22-CV-2880, 2023 WL 6385346, at *6 (E.D.N.Y. Sept. 30, 2023) ("Since *Mantikas*, district courts within the Second Circuit have continued to recognize that clarification can defeat a claim that a defendant's [statement] is deceptive if the plaintiff challenges an ambiguous representation . . . made in the advertisement but have held that clarification cannot correct an *unambiguously* misleading representation.") (emphasis in original).

In sum, Plaintiff has not sufficiently alleged that a significant portion of reasonable consumers acting reasonably would be misled by the "All Natural" representation because some of the natural fruit and vegetable concentrates are included for color.

### 2.  Citric Acid

Plaintiff also alleges that the label is misleading because the Products contain citric acid.  (*See* FAC ¶ 21.)  Plaintiff submits that until the early twentieth century, citric acid was only derived from citrus fruit, but "[f]or over a hundred years, none of the production of citric acid has been natural because it is made beginning with fermentation from the *Aspergillus niger* mold" and "recovered through numerous chemical reactions with synthetic mineral salts and reagents."  (*Id.* ¶¶ 25-27.)  Thus, Plaintiff describes citric acid as "an industrially produced, synthetic ingredient."  (*Id.* ¶ 24.)

Plaintiff's "generalized statement about [the production of citric acid] is not enough to adequately allege the citric acid used in the Product[s] is industrially produced."  *Indiviglio v. B&G Foods, Inc.*, No. 22-CV-9545, 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023).  "To

satisfy the pleading standards, plaintiff must draw a connection between the common industry practice and the actual practice used by defendant." *Id.*; *see Tarzian v. Kraft Heinz Foods Co.*, No. 18-CV-7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019) (dismissing plaintiff's New York GBL claims because concluding that the defendant's citric acid is artificial based on "Plaintiffs' allegations detail[ing] the practices commonly used to manufacture citric acid throughout the industry . . . is too great of an inferential leap.").  Even in a case where the plaintiff alleged that laboratory analysis had shown that the product contained the artificially produced version of malic acid rather than the naturally produced kind, the court found this allegation to be "a far cry from raising 'any factually substantiated allegations' that the Product contains artificial malic acid, rather than natural malic acid."  *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 306 (S.D.N.Y. 2023) (quoting *Wynn*, 2021 WL 168541, at *6); *see Myers v. Wakefern Food Corp.*, No. 20-CV-8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (Plaintiff alleged product was subjected to lab test but did not "provide any details whatsoever about [what] this laboratory test entailed.  She does not, for instance, describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc.").  If plaintiffs who actually tested the product did not provide sufficient factual content to render it plausible that the product contained artificially derived compounds, Plaintiff's bare claim here that citric acid today is made from mold rather than citrus fruit cannot, absent any allegation specific to the Products and absent any basis for her assertion about all citric acid, be sufficient.  "[T]he Complaint's allegations that the Product contains artificial [citric acid] are conclusory statements that the Court is not required to accept." *Hawkins*, 654 F. Supp. 3d at 306.  Thus, Plaintiff has also failed to adequately allege that the "All Natural" label is false or misleading because the Products contain citric acid.

Even if Plaintiff's bare allegation that citric acid today is industrially made by fermentation of the *Aspergillus niger* mold was, without any corresponding factual basis, sufficient to show that the Products contained the industrially produced version, that would not end the inquiry.  The question would remain whether the reasonable consumer acting reasonably would regard as unnatural citric acid derived from *Aspergillus niger* – itself a natural product. Plaintiff alleges that the fermenting process produces a broth containing citric acid and that the broth must be recovered through chemical reactions with synthetic agents, (FAC ¶¶ 26-27), but does not allege that the resulting citric acid contains synthetic agents.  She also describes the citric acid as a "synthetic ingredient" but describes no respect in which the citric acid derived from *Aspergillus niger* differs chemically from the citric acid derived from citrus fruits.  (*See id.* ¶ 24.)  A reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic.

Plaintiff submits that the Court should follow *Mason*, where the court held that the plaintiff's claim was plausible based on the FDA's suggestion that citric acid manufactured from *Aspergillus niger* makes an "all natural" label misleading.  (*See* P's Opp at 6-7.)  *Mason* is distinguishable, however, because there the plaintiff alleged that the citric acid derived from *Aspergillus niger* contained synthetic solvents, *see* 515 F. Supp. 3d at 143, but Plaintiff makes no such allegation here.  Moreover, unlike the plaintiff in *Mason*, Plaintiff has not pleaded anything about the FDA's view of citric acid, but even if she had, that would not control for the reasons discussed above.  Plaintiff has not adequately alleged that the Products' "All Natural" label is misleading because the Products contain citric acid.

Accordingly, Plaintiff's GBL claims must be dismissed.

### B.   <u>Unjust Enrichment</u>

To state a claim for unjust enrichment under New York law, a plaintiff must show that "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015).  "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016).  Courts will routinely dismiss an unjust enrichment claim that "simply duplicates, or replaces, a conventional contract or tort claim." *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013).

Here, Plaintiff "makes no factual allegations unique to [her] unjust enrichment claim and fails to explain why the unjust enrichment claim is distinct from . . . [her other] claims." *Advanced Knowledge Tech, LLC v. Fleitas*, No. 21-CV-992, 2021 WL 6126966, at *5 (S.D.N.Y. Dec. 28, 2021).  Because her "unjust enrichment claim relies on the same operative facts as her other claims . . . to the extent these claims ultimately succeed, the unjust enrichment claim would be duplicative, and to the extent the claims fail, the basis for plaintiff's unjust enrichment claim would necessarily crumble." *Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205, 219 (W.D.N.Y. 2022); *see Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808-09 (S.D.N.Y. 2021) (dismissing unjust enrichment claim because based on same facts as consumer deception claims); *Alce v. Wise Foods, Inc.*, No. 17-CV-2402, 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative of GBL §§ 349 and 350 claims).

Therefore, Plaintiff's unjust enrichment claim is dismissed.[8]

### C.     Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In her Opposition, Plaintiff requested that I either deny Defendant's motion or grant her leave to amend a second time.  (*See* P's Opp. at 7.)  Plaintiff has already amended her Complaint once, after receiving a pre-motion letter outlining the grounds on which Defendant planned to move, (*see* ECF No. 8), and was offered the opportunity to amend again at the pre-motion conference, which she declined, (*see* Minute Entry dated July 28, 2023).  Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy

---

[8] Plaintiff's assertion that she is "permit[ted] . . . to set out 2 or more statements of a claim or defense alternatively or hypothetically," (P's Opp. at 7), does not alter this outcome.  As previously explained to Plaintiff's counsel, while "unjust enrichment may be pleaded in the alternative[,] it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."  *Fuller*, 2023 WL 8005319, at *9 n.10; *see Bermudez v. Colgate-Palmolive Co.*, No. 21-CV-10988, 2023 WL 2751044, at *15 (S.D.N.Y. Mar. 31, 2023).

district court need not allow itself to be imposed upon by the presentation of theories seriatim.");
*In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying

leave to amend because "the plaintiffs have had two opportunities to cure the defects in their

complaints, including a procedure through which the plaintiffs were provided notice of defects in

the Consolidated Amended Complaint by the defendants and given a chance to amend their

Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended

complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance*

*Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an

advisory opinion from the Court informing them of the deficiencies in the complaint and then an

opportunity to cure those deficiencies.").

Further, Plaintiff has not suggested that she is in possession of facts that would cure the

deficiencies identified in this ruling.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505

(2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how

amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d

364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence

of any indication plaintiff could or would provide additional allegations leading to different

result); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y.

Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment

would cure the deficiencies identified by the Court").

Accordingly, the Court declines to grant Plaintiff leave to amend a second time.

IV.     <u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The Clerk of

Court is respectfully directed to terminate the pending motion, (ECF No. 17), and close the case.

**SO ORDERED.**

Dated:  March 18, 2024
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.